Thank you very much. It's good to have you here today. Thank you for bearing with us in these difficult times. We appreciate your help and your cooperation. We understand, Mr. Thompson, that you won't be able to see us, so we apologize in advance for the fact that we will have to interrupt you with our voices while you are trying to speak. We will hear argument then in No. 19-2273. And, Mr. Thompson, you're free to begin. Good morning, and may it please the Court, David Thompson for the appellants. In denying the motion to intervene, the District Court made several legal errors. First, with respect to the interest prong of Rule 24, the District Court completely ignored the General Assembly's interest in being free of the preclearance requirements of Section 3 of the Voting Rights Act. In addition… Excuse me, Mr. Thompson, I have a question. This is Judge Quattlebaum. Yes, Your Honor. Before you get there, I have a question about standing. And my question is based on the Supreme Court's Town of Chester case. Do you read that case to say that standing is not a requirement if the proposed intervener is seeking the same relief as the parties? And if so, and really regardless, do you contend that you are seeking different relief from the defendants? We are not seeking different relief, Your Honor. I think, respectfully, the key case is the Bethune-Hill case, where the Supreme Court said because neither role that the House in Virginia had been seeking invoked the Court's jurisdiction, it was not previously incumbent upon the House to demonstrate standing. And so, as an intervener, a defendant intervener not seeking to invoke the Court's jurisdiction, we believe Bethune-Hill clearly states that we did not have to demonstrate standing. And I might add that really makes sense because if you look at the Supreme Court's cases like Bowser v. Sinar or City of New York v. Clinton, where injunctive relief is sought, if one plaintiff has standing, the Court does not require the other plaintiffs to have standing. And this is sort of the flip side of that. When you've got a plaintiff withstanding and a defendant withstanding, then another defendant intervener should not have to demonstrate standing. I would hasten to add, if we did need to demonstrate standing, we could do so for two separate reasons. Number one, we have an interest in being free and clear of Section 3 of the Voting Rights Act preclearance. And number two, we've been designated the official agents of the state. All agree that the state has Article 3 standing to defend its laws. And Hollingsworth made clear that the state must be able to designate its own agent. And here, we have been so designated. If the Court looks at 120-32.6b, the language of that statute is unequivocal. It says whenever, and I really want to underline the word whenever, there is a challenge to the constitutionality or validity of an act of the General Assembly, my clients shall be necessary parties as agents for the state and shall have final decision-making authority. You will read the brief of my friends for the NAACP before this Court, and you will not see a word about 120-32.6b. They don't address it. That's because there's no answer to it. Mr. Thompson, sorry, it's Judge Harris. I really do apologize for having to interrupt this way. I understand that we're talking about standing now, but I have a question about your position with respect to state law. It's not your position, or is it? Please correct me if I'm wrong, that the state law provisions you're talking about sort of override the Rule 24a requirements for intervention as of right. Is it? I mean, Rule 24a- We agree with you, Your Honor. That's why it's phrased as a request because of the supremacy clause. If we look at 1-72.2, it says that federal courts are requested to do this, but the one thing that is clear is that state law and states have the absolute authority to designate whatever agent they want, and here we have been designated. That's our position. Okay. So, Mr. Thompson, I just want to bring you back to 24a and its requirements, and in particular, the requirement that the proposed intervener's interests not be adequately represented by the parties. And is there any case in which a federal court has held that the attorney general of a state who has a statutory duty to defend a state law and purports to be defending it is not providing adequate representation under Rule 24a? Has any federal court ever made what the Seventh Circuit described as that extraordinary finding? Well, Your Honor, the case that comes to mind that's most on point would be Trobovich because there was the Secretary of Labor. I understand it's not a state attorney general, but it was an official governmental entity that was then a private party was allowed to come in. The court made reference to the Planned Parenthood case in the Seventh Circuit, and I think that's distinguishable for four reasons. Number one, they have a different test in the Seventh Circuit. They have a test of bad faith or gross negligence. This court has never adopted that test. Number two, the Seventh Circuit was concerned that under Wisconsin law, there was no primacy. There was no identification of who would have final decision-making authority. And here, 120-32.6b makes it crystal clear. We have final decision-making authority. In addition, and this is a critical point on adequacy of representation because it goes to one of the two fundamental legal flaws in the district court's decision. There, there was not a divergence of interest. In this case, it is unequivocal there is a divergence of interest for the following reason. The state has an interest in the nuts and bolts logistics, the State Board of Elections, of elections. That's a distinct interest. We, as the General Assembly, have a distinct interest in being free and clear of the preclearance requirements of Section 3. Putting to the side the alleged shared interest in defending the validity of the statute, here we have an unequivocal divergence of interest and under Trovavich and under United Guarantees. Mr. Thompson, could I interrupt you here? I'm sorry. Do you want to finish your question? Where you're talking about now is an issue I wanted to explore with you. And they really relate to two what I call presumptions that I read about in Fourth Circuit law. One is the presumption that you see probably most in the Stewart case that seems to apply when you have a government defendant. And I think arguably a private proposed intervener. But I want to shift to the other presumption that I think exists from Virginia versus the Westinghouse case and ask you, is it your position that that presumption that when the parties are seeking the same ultimate relief applies to us? No, Your Honor. First of all, in the Virginia case that you referenced from 1976, Virginia conceded that its interests at trial would be adequately represented. So that is the first point I would make. And likewise, with respect to the divergence of interest, if we look to United Guarantee, we can see there both the bank and the owner of the certificates were trying to uncover the fraud that had allegedly occurred. If we look at Trovavich, both of them were trying to undo the election. And so really when you have different interests in Trovavich, the key was that there were different interests. The solicitor of labor had— Does that issue—I want to make sure I understand analytically where we're making that point. Is your point that you are not seeking the same ultimate relief because you have different interests? Or is your point that we're seeking the same ultimate relief, but that divergence of interest affects the analysis that we must do under the Virginia case? And I presume that the actual adversity prong of that test. I'm trying to make sure where your arguments fit in analytically. Your Honor, it's an excellent question. And I don't think the cases are uniform or, you know, collusive on that point. I think the key analytical point is that for adequacy of representation, if we can identify that divergence of interest, regardless of which bucket you want to put it in, then we satisfy that prong of the Rule 24 test. But I'd like to say, if I may, there's another reason, an independent reason we satisfy the adequacy of representation prong. And that's because even with respect to the shared interest, we have an overwhelming case that we meet any standard. Now, we'd say the Stewart versus Huff standard doesn't apply because, as your Honor recognized, there was a private intervener trying to dislodge the state defendant. But leaving that to the side, here we have a record of nonfeasance in the state case, the Holmes case, which is the same issue at the same time with the same lawyers. We have not. Mr. Thompson, Mr. Thompson, sorry, it's Judge Harris again. See, when you talk about a record of nonfeasance, that sort of brings me back to where I started. You're asking a federal court to say that the Attorney General of a state is committing nonfeasance, is in violation of his statutory duties. And that, as the Seventh Circuit said, does strike me as a quite extraordinary request and an extraordinary finding for us to make. Do we need to find nonfeasance in this case for you to prevail? No, Your Honor, you don't. I mean, that's, we have two independent ways to win under adequacy of representation. Number one. But this, this second way you're talking about depends on the Attorney General having violated a statutory duty as well, I suppose, as a duty of candor to the court? No, Your Honor, we don't, we don't believe that to be true. We think the minimal. I apologize, I didn't hear you, Your Honor. Maybe I don't know what nonfeasance means. What does nonfeasance mean? Oh, well, what I'm saying is the nonfeasance standard doesn't apply here because that comes from Huff and that was a separate, that was a private party trying to come in and dislodge a governmental entity. We are government actors. Mr. Thompson, let me, Mr. Thompson, let me interrupt you. I think the nonfeasance standard actually comes from the Virginia case. I think that that's the case that says if you seek the ultimate relief, you must show adverse entrance, collusion, or nonfeasance. And I know you contest whether or not that presumption applies to here. But, but I may be following up on Judge Harris's question. If, if it does apply, do you think you have shown either adverse interest, collusion, or nonfeasance? And if you could be very specific as to how you show those three things, I would appreciate it. Yes, Your Honor, I will be specific. And we do meet that standard for five reasons. And I'm going to give JA sites. First, the Attorney General neglected to say one word on likelihood of success on the merits in the parallel Holmes decision. You can see this at JA 589, where the Attorney General said that the State Board of Elections' primary interest was to know what law, if any, what law, if any, would be enforced. You also can see JA 763, the transcript of the oral argument, where they say not one word on likelihood of success on the merits of the key claim of racial discrimination. Point two, we have the Governor of the state at JA 636 openly siding with the plaintiffs in this case in trying to tear away part of the foundation of North Carolina voter ID law. Number three, we have the Attorney General in this case failing to make a dispositive legal argument. The NAACP sat on its hand for nine months, not filing for a preliminary injunction. Under the Quintz case, this court made clear equity demands haste. And they sat on their rights. And that should have been made as a dispositive legal defense. And they did not make that defense. The next point is they have not built an adequate record. They did not put in a single rebuttal expert report. They did not depose three of the five people. And then finally, we have the extraordinary act of sabotage. Sabotage. In 2016, where the Governor of this state and Attorney General Stein pulled a cert petition in the face of four members of the United States Supreme Court saying that there was ample grounds for a stay, Justice Gorsuch had been nominated. The writing was on the wall. They pulled that cert petition. And at JA 182, they celebrated that they had done that. Okay, Mr. Thompson, so you want us to hold, you want us to find as a federal court that the Attorney General of North Carolina is engaged in sabotage of this case? That's not right, Your Honor. We have five independent agencies. But I will say that the court does not need to blind itself to what happened in 2016. These are implacable political foes of this law. And that is relevant. And we see it manifesting itself when they have a dispositive legal response. You know, my friends at the NAACP, they'll tell you, well, we didn't file the PI because there was a motion to dismiss pending. That is factually false and legally irrelevant. Factually false because we're fixing cases. This is Judge Harris. I'm just going to interrupt one last time. I have a concern about this case, which is that, I mean, election law cases are inevitably very political. And as an Article III court, we try our hardest not to appear political or to get involved in political kinds of arguments. And to have you arguing to us that we should endorse an sabotage is, from that perspective at least, it is unhelpful. Well, Your Honor, I hear you. And I was reluctant to use that word. But let me tell you, in my many years of litigating, I have never seen a state pull a cert petition when four members of the United States Supreme Court said that there was grounds for a stay. And as the court knows, one of the criteria for granting a stay is that it's probable that it will return. That was an extraordinary act in 2016. They are asking the court to blind itself to it. The court doesn't need to go there, but we do believe it's relevant. I see I'm into my rebuttal time. I'd like to reserve the time that I have, if I may. Of course. Thank you. Thank you very much. Mr. Wirth, I believe, we'll hear from you next. Yes. Thank you, Judge Harris. And good morning, Your Honors. May it please the court. My name is Stephen Wirth, and I'm appearing on behalf of plaintiffs. Plaintiffs in the state have agreed that I'll speak for 13 minutes this morning, and counsel for the state will speak for the remaining Senate. Judge Biggs properly exercised her discretion when she decided, twice, that the Attorney General was adequately defending this lawsuit, and that granting intervention would derail and delay this litigation. That decision was correct, and certainly not an abuse of Judge Biggs' broad discretion based on her actual observations of the party's conduct in this case. But there's a more fundamental reason why the proposed interveners are not proper parties in this litigation. They lack standing to intervene because they do not have a concrete and particularized interest in the outcome of this litigation. Now, there are three key points that I'd like to make with regards to standing. First is that interveners must have standing in their own right to intervene in a case in federal court. Mr. Wirth, if I could interrupt you there, I'll address this to your colleague. The Town of Chester case certainly implies that with respect to parties seeking different relief, but at least by inference suggests that's not the case with parties seeking the same relief. Do you agree with that reading, or are you saying that they are not seeking the same relief here? So, the Town of Chester case did not decide that question, Judge Quattlebaum, and four circuits that have addressed it, including the D.C. circuit, have all held that all interveners must independently demonstrate standing to intervene. But beyond that, I think there's a great deal of confusion this morning in my friend's argument. But how do you square that with Bethune Hill? I mean, I'm not sure that this is like the place we need to focus, but how do you square that with Bethune Hill where the court says, listen, if the state says that they want agents, plural, they get to pick agents, plural, and we would let them represent the state, right? I mean, is your view that's dicta and we should just ignore it? No, absolutely not, Judge Richardson. That's a separate question from whether all interveners need to have standing. That's a question of whether these interveners have standing. And I think under Bethune Hill, under both prongs of Bethune Hill, the proposed interveners here don't have standing. First of all, they don't have standing because they can't assert the interest of the state unless they've been designated the state's interest. And here, the state has... Mr. Worth, go ahead, Judge Richardson. So, to follow up on that, but that point depends upon you reading the statute to not designate the proposed interveners as an agent of the state. Is that... Yes, it requires... All right. But if we disagree with that premise, so if we believe the statute does, and this is a hypothetical, if the statute does designate the proposed interveners as an agent of the state, then you would agree they have standing under Bethune Hill? If the statutes were to designate them the agents, and if that designation were constitutional under North Carolina's constitution, then perhaps they would have standing. But for three reasons, the three statutes that they point to don't designate them... Mr. Worth, I want to... And you've written those clearly, so I appreciate, I think, your standing arguments, and I'm not trying to disregard those, but we've got limited time, and I want to ask some questions about it. It seems to me the Stewart versus Huff case is kind of tough for you to rely on the presumption there. In that case, it was a presumption that applied in the government of adequacy when the government was the party. But the difference there was that private litigants, and here we're talking about the interveners being also government and being the one that the state raised. Do you agree that we really shouldn't be talking about the Stewart versus Huff presumption, and if anything, I ought to be talking about the Virginia versus Westinghouse case? I think both cases could apply here. However, I think Judge Harris was right when she said that this court owes deference to a duly elected attorney general of another sovereign within our federal system, and this is a state executive office... Both the district court and the court of appeals talked about the vigor with which the attorney general defended that law, and I think your colleague says, yeah, the attorney general's on the pleadings and the attorney general's doing this, but there's a question about that question of whether the interest of the state in these laws is really being zealously represented, although it's for sure being represented, and that seemed like an issue to the court of appeals in Stewart versus Huff. Is it important that that be considered by the district court, the level of vigor of the representation? No, I don't think that the district court was obligated to find that the attorney general of the state here is particularly the zealous advocate or the best advocate in the world. I think Judge Harris is absolutely right that this court owes deference to the attorney general of another sovereign, and that that executive officer who is charged by law to faithfully execute and defend the laws of the state of North Carolina is due deference by this court as a matter of federalism and comity. Yes, Judge Harris. Counsel, I understand my reading of the statute is different than yours, but except that I believe the statute authorizes the interveners to be an agent, and so it seems like the problem that I'm faced with is I understand some deference to the attorney general of the separate sovereign, but there's also deference to a state statute passed by the deference for one branch of a state against deference for another branch of the state in trying to evaluate those two. And it strikes me here that whatever deference one gets comes at the cost of the other. And so it seems like the two deference issues fall away, and we come back to the question at its very base, the actual text of Rule 24 of whether there's an adequate representation. Why don't I think about those two deferences as simply counterweights that fall away? Well, you don't owe any deference to the state legislature here because you don't owe any deference to the state legislature's statutes here for a couple of reasons. For one, well, as you noted, we disagree on the meaning of these statutes. You've brought up this as an agent of the state language. I'd just like to point out that I'm aware of no case in North Carolina that interprets that language as designating the interests of the state. And that's the important language in Bethune Hill, that the interests of the state have to be conferred upon another branch of the government in order for them to represent the state. And here that simply hasn't happened. Instead, the as an agent of the state language is used to mean that the official is acting in his private person. And so here, when the President of the Senate and the Speaker of the House are acting as agents of the state, it doesn't mean that they are representing the state's interests. In fact, statutes here specifically say that they are acting on behalf of the General Assembly. So they're representing the legislature's interests. That's absolutely separate from the state's interests. But that's the only reason. I mean, you disagree with my reading of the I'm not trying to fight you on that, but I'm trying to isolate. That's why you think that the deference to the Attorney General outweighs the deference to the legislature. The statute is because you think I'm reading the statute wrong. And I understand that. But if you accept my hypothetical, don't the two differences sort of fall away and we come back to the actual rule? No, I disagree. I disagree, Judge Richardson. I think that this court owes deference as a matter of comity as well to the Attorney General. And here, it's not just because the Attorney General is representing the state. It's because the Attorney General is bound by North Carolina law to faithfully execute and defend the laws of North Carolina. And so it'd be absolutely unseemly for this court to, as a matter of its adequacy analysis, to pry incredibly into the mechanics of every single argument, of every paper filed, of every argument raised. It's not permitted under either Stewart or the Seventh Circuit's decision in Call. And Call had a very similar statute. I think that that statute did not go far enough to grant the Wisconsin legislature standing in that case. However, the statute did allow them to intervene. Yes, Justice Quattlebott. Thank you. Thank you, Mr. Worth. Going to some of the issues, I don't have the exact language in front of me, but the district court, I think, determined that the statements of the governor and the conduct or what transpired in Holmes to be not relevant or irrelevant to her consideration. And my question is, it looked like that was more of a categorical legal determination. And if so, I didn't see the authority on which that was based. I certainly can imagine someone saying those factors have minimal weight or less weight than other factors. But is there a basis for saying those factors shouldn't be considered at all? Well, I think Judge Biggs was correct that the attorney general's conduct in another case is simply irrelevant to how they're conducting this litigation, especially since in that litigation, the General Assembly is named as a party and has been prosecuting that case itself as sort of the lead counsel there. So looking at the Holmes case, I think, is absolutely irrelevant. And beyond that, the... But why is that? Why? Help me understand that a little bit, because the point of Rule 24, the adequacy, is to make a predictive judgment, right? I mean, that's the difference here. I mean, Rule 24 requires the district court to make a predictive judgment. And so like looking at their conduct in a related case doesn't seem wholly irrelevant. I mean, I'm not saying it's like the most important piece of evidence here, but I find it odd that it's irrelevant when we're asking the district court to make a predictive judgment to look at how they've done in a different case. Well, just to be clear, Judge Biggs did look at the conduct in Holmes. In fact, in her second opinion, she went through the various conduct in Holmes and she addressed all of their arguments. So it's not as if Judge Biggs completely ignored it, but she's right that it's irrelevant to the decision of how the attorney general is representing the state's interest in this litigation. And she found that there was no problem with the state's zealous advocacy in Holmes, and there's no problem with the state's zealous advocacy here. I see that my time is just about to expire. I'd like to just address one other point, if that's all right, Judge Harrison. So we haven't spoken at all about appellate jurisdiction. I just don't want the court to get the idea that we've abandoned that argument. There's no appellate jurisdiction because the proposed interveners failed to timely appeal this case. And so we fully agree with that. Can I ask you, I'm sorry, but since you raised it, I did have a question about that and a concern that I was hoping you could address for me. So what if, just kind of assuming arguendo, I think you might be right about this, that the proposed interveners did have an order that was final for purposes of appellate review and after the first decision, and they should have appealed that. What if I thought that, but I also thought that there was a bit of a notice problem because our law on what is final for purposes of appeal is kind of a mess. And also there is no case law directly on point from this circuit in this context saying you really needed to appeal that first order. Under normal circumstances, if this weren't a jurisdictional question, we could sort of say, well, you should have appealed it, but you weren't on notice. So we're not going to hold you to that here. But this is jurisdictional. So how do I deal with, if I think this might be right, but I also think they might not have been on notice as to the rightness of your argument? Judge Harris, I think you sort of answered the question. This is jurisdictional. And so you have to decide the question. And there isn't sort of an escape hatch. So yes, we would say that there is a lack of appellate jurisdiction here. And because there's no jurisdiction, this appeal has to be dismissed. If the court has no further questions, I'll let the state present its arguments. Thank you. Thank you. Good morning, your honors. May it please the court. I'm Paul Cox from the North Carolina Department of Justice, representing the members of the North Carolina State Board of Elections, the defendants named in this lawsuit. I first want to go to Judge Quammenbaum's question about the district court's analysis of the adequacy of representation. And that analysis actually does appear at JA-3242 and a few pages subsequent to that. What the court does say, does express questions about whether a separate case is relevant to adequacy of representation in the current case. But then it nonetheless goes through the analysis and determines that that representation has been adequate. And the context of these cases, as my colleague from the plaintiffs has mentioned, have to be considered when considering the adequacy of the representation in the Holmes case. Of course, we were working alongside the members of the legislature, the attorney general's office, working alongside the members of the legislature in defense of that lawsuit. The attorney general's office moved to dismiss five of six of the claims successfully at a Rule 12b6 stage. And that is not an adequate defense of the law. Furthermore, the selective quotations from the State Board of Elections brief from that case do not give full context to what was going on in that case. And if one reads the briefs, you can see that the state board incorporated its arguments on the merits from the motion to dismiss to argue that a preliminary injunction would be inequitable. And furthermore, if the court views the video that the legislative intervener, proposed interveners have cited in both of their briefs, one can see for itself that the court can see for itself that far from what has been represented here, the attorney general's office representing the State Board of Elections was zealously arguing against the entry of a preliminary injunction. Now, it also raised some issues about the administrative problems that whether the court would issue an injunction and perhaps an injunction would be lifted down the road. And the State Board of Elections was duty bound to make the court aware of those administrative problems. Counsel? Yes, Your Honor. Did you, did, I don't mean you personally, obviously, I mean the attorney general's office, did you make an argument at the preliminary injunction stage about likelihood of success on the merits? And if so, where in the record can I find that? Yes, Your Honor. So, at, I hear some background noise, but at J.A. 585-88, you can see that the State Board of Elections was opposing the entry of an injunction because it would disrupt the extensive work the State Board had already gone through to prepare for implementation. I'm asking the different questions. The question I asked was, did you make an argument about success on the merits? I get the equitable arguments about messing up your, as your counsel describes it, the nuts and bolts. I'm just asking the narrow question of, did you make an argument about success on the merits? Yes, Your Honor. We did. It's toward the end of the brief and I don't have it in front of me right now. But the State Board of Defendants did say that for the reasons raised in the motion to enter, because there's such doubt about the merits of the plaintiff's case. And then again, if the court were to review the video, it's very clear that the State Board Defendants raised before the three-judge panel in Superior Court that the merits do not merit, for lack of a better term, a preliminary injunction in that case. Now, this is all, this is all issues Excuse me, if I could ask a question. I think your, the proposed intervenors mentioned in their list of things that supported their inadequacy argument, the failure to identify experts. And I'm not sure that was before the court at the time of the order that's on appeal now. And that may have been at the preliminary injunction hearing later. So I want to explore that in rebuttal. But, and you're of course free to answer this question by saying that way. But do you have a position as to, that you're willing to state as to, and again, I'm not trying to get too much into privileged information, but why you would not designate an expert in support of the position? Yes, Your Honor, and this court has addressed this very situation, the Steward v. Huff case. And I understand Your Honor's questions about how, whether that might be distinguishable. But in this case, the State Board obviously was looking at a very well-developed body of on photo ID laws. And this court is no stranger to those cases. This court decided in the Lee case that a law that was strikingly similar to North Carolina's law should be valid. And the Seventh Circuit had determined the same thing. The Fifth Circuit had determined the same thing. We had a Supreme Court jurisprudence in Crawford. So it's not an unreasonable litigation strategy, much like this court said in Steward, to rely on legal arguments for why a preliminary injunction should not issue and why our merits arguments should prevail. Moreover, it's not exactly true to say that the State Board defendants didn't put forward any evidence. I mean, there are 33 exhibits attached to our opposition to a preliminary injunction. Some of those are technically experts. They are fact witnesses that have a certain expertise, such as the State Board of Elections Chief Information Officer that was able to rebut some of the arguments made by the use of the data by some of the plaintiffs' experts. The State Board Executive Director, who was able to talk about all of the ways that the State Board was implementing the law in order to reduce or eliminate any potential discriminatory burdens it may have. So it's a bit of a misconstruction of the record to say that, you know, we simply relied on legal arguments when, in fact, we put forward substantial factual support behind our arguments. And I also want to address Judge Richardson's line of questions about deference. While the court may want to defer to a state law on the issue of who should be entitled to represent the state's interests, the court also has to consider all bodies of law from that state. I mean, if the North Carolina Constitution, in Article I, Section 6 of that Constitution, the state's organic law says that the legislative executive and judicial power shall be forever separate and distinct, the court also has to make a determination if it's going to go toward that statute as to whether that statute can constitutionally apply in the way that the legislators are claiming that it does here. And we contend that it absolutely cannot. Moreover, the context of this case makes clear why that's the case. At least for our purposes, why don't we look at the 2018 Berger case from the North Carolina Supreme Court and the Windsor decision from Justice Kennedy to say that representing the constitutionality of a law is not an exclusively executive function. Prosecuting under a law may well be, but I read those cases, particularly Windsor, as saying that it's not an exclusively executive function. So how do you get around those? Well, Windsor and the Bethune Hill case, they all deal with a very different situation where the state is not already represented. And I think the Call case that was subject to the 28-J letter put forward by the plaintiffs elucidates this issue. The Bethune Hill case dealt with a situation where the Attorney General was non-present. The Attorney General was no longer in the case. So the issue was whether state law allowed the legislature to displace the state's typical representative. But under your argument, if defending the law is exclusively executive, then that wouldn't be permissible. So if nobody's there, then the case is over. Because if it's exclusively executive, then it cannot be done by the legislature if you're trying to make a strict separation of powers argument. And that seems to be rejected in cases like Windsor. Well, in the context of this case, that is true. I'm not making a blanket argument as to all cases in all time. But in the context of this case, it is true. Because what the plaintiffs are seeking here is to enjoin executive action. They're seeking to stop the State Board of Elections from enforcing a law. And they're seeking, and even the VRA bail-in provision that the legislators are referring to as the remedy they want to avoid, that provision prevents the enforcement. The language of that law, the VRA, is that it prevents enforcement of a law. And this court has held repeatedly that why isn't that the same story in Windsor, right? They wanted to prevent the enforcement of DOMA. I don't see how that gets around it. Maybe I'm just missing something there. Well, I understand your question, Your Honor. But the Supreme Court was not addressing North Carolina's constitutional requirements of separation of state in the Windsor case. I mean, that simply wasn't that issue. And it neither was in the Platoon Hill case. And while we don't think that it's really the province of this court to dive into the constitutional contours, the state's organic law, and as to how far that organic law will permit the legislature to get into executive functions, that is the reason why we think the court should rely on the adequacy of the representation and the deference that this court shows to district courts as to that determination. So I understand your position in part is that the statute enacted by the North Carolina legislature is unconstitutional. I'm not making an official argument, Your Honor. But in the context of this case, where the sweeping argument being made here is that the legislative leaders, two leaders of the legislature, are authorized to represent the state as a whole and its interests in litigation that is seeking to enjoin executive action, in that context, it would transgress the boundaries of the Wallace v. Bone case, which directly addresses, you know, the executive branch's conduct in litigation. So I hear the attorney, I mean, that seems like a remarkable statement to me, that the duly enacted North Carolina statute, whatever it means, at least in your view, raises substantial constitutional questions. And in fact, it seems like you're saying, is itself unconstitutional by designating these intervening plaintiffs as agents of the state. Well, Your Honor, in the context of this case, as I mentioned before, where the case is seeking to enjoin executive action where the state's interests are necessarily executive in nature, that does present a serious problem of constitutionality under state law. Moreover, we don't believe that the statutes actually go as far as permitting the legislature to represent the state as a whole, because the language is limited to representing the General Assembly and the legislative branch of North Carolina, which is found in those exact provisions. And just like in the McCall case from the Seventh Circuit, the North Carolina statutes also and have always authorized the attorney general and bound the attorney general by duty to represent the state. So to the extent that there is a... Yes, Your Honor. I know we've kept you too long, but with the indulgence of my colleagues, can I ask you one last question about the state law? Just assuming hypothetically that even if I thought the state law was not entirely clear in every particular, it does seem, just assuming to me, to express sort of a strong policy of the state of North Carolina, that these proposed interveners should have some role in defending state statutes. If I thought that, is there any... Putting to one side the protected interest question, should that affect anything else about the way I think about this case? Should it affect the way I think about adequacy of representation or permissive intervention or anything like that? Your Honor, I think that the views expressed in those statutes are limited themselves to the interest of the legislature. And to the extent that the legislature... I'm sorry, just for purposes of my hypothetical question, just assume I thought... It's not entirely clear to me how all these interlocking pieces fit together, but it sure seems like the legislature of North Carolina and now this duly enacted law express a policy of the state that these proposed interveners should have some role in defending state statutes and defending the state interest in its own statutes. If I thought that, I can see how that would relate to the protected interest analysis. Would it relate to anything else about this case? Would it affect it all the way I thought about adequacy of representation or maybe permissive intervention? If the interests that we assume that the legislative leaders are seeking to assert is the state's interest in this case, it would not affect the adequacy of representation question because the interest would be the same. Just like the call court talks about, the interests of the state are two different agents seeking to assert the same interest. So yes, Your Honor. Just to follow up on that and go ahead and finish your answer, I just want to follow up once you finish. I don't mean to cut you off. I was only going to say, Your Honor, that to the extent that the legislatures are purporting to represent the interest of the state, then you have to look at how adequately are those interests being represented. And that is a very factual determination based upon the record that this court owes deference to the district court to. And what about permissive intervention? Would it factor in there? It may, Your Honor. We haven't briefed that issue and we didn't object to permissive intervention. And so we're not saying, and I want to be clear about that, our office is not saying that in no circumstances should the legislative leaders be able to intervene in a case. But that should be up to the discretion of the district court in reviewing the permissive intervention factors. So it may. I don't know for sure, Your Honor. So if I could follow up on your answer to Judge Harris's question, does a policy statement by the legislature that it would like to see these representatives involved in the defense of the litigation, is it your position that doesn't have any bearing on adequacy? Doesn't it indicate to some extent that the state's view through the legislature that to be adequately represented, it needs all these players in the game? Well, Your Honor, adequacy of representation is for the federal court to determine. So I don't think that a state statute that doesn't directly say anything about adequacy of representation should be read into the federal district court's determination, which it should make based upon its review of the record and its closeness, as this court said in the Stuart v. Huff case, its closeness to the facts in the record on adequacy of representation. I think the legislation is most relevant to the question of interests. And the questioning and the discussion has laid that barrier here. Counsel, I'm just going to interrupt to see if my colleagues have additional questions. If you could just wrap up quickly. I'll leave it at that, Your Honor. As we mentioned before and below, we did not take a position supporting or objecting to it, but we do urge the court to reject some of the arguments for intervention as of right, which we believe would do damage to North Carolina law. Thank you. All right. And Mr. Thompson, you've got some rebuttal time, I think. Thank you, Your Honor. I think I have about four minutes. So I'd like to just dive in. Oh, wonderful. Thank you. Okay, great. So I'd just like to answer a few points that my friend, Mr. Cox, made. First of all, on likelihood of success on the merits, you will search this record and you will not find a word said by the state attorney general on likelihood of success on the merits of count one, which relates to intentional racial discrimination. That's the key count that the count the plaintiffs in state court and in federal court have prevailed upon. Not one word was said about that. Number two, on separation of powers, there is a distinction in North Carolina law between enforcing a law and defending against an attack on a law. And we can see that in Martin versus Thornburg. In addition, they want to maintain that there's a hermetic ceiling between the branches under article three, section seven, subsection two of the North Carolina constitution that confers on the attorney general. And they did just that in 114 subsection 10. There's been a lot of discussion about federalism. Federalism requires this court to defer to the interest of a state, to state law, not to defer to an attorney general and not to defer to a member of the general assembly, but to defer to state law. State law is unequivocal that my clients are agents of the state. With respect to- Mr. Thompson? Sorry, Mr. Thompson, it's Judge Harris. And I see that then Judge Quadobaum also has a question. I actually want to pick up on some of the questions Judge Quadobaum was asking before about presumptions and what standard we're applying. And when we talked about the call case out of the Seventh Circuit, you said one way you could distinguish it is that the Seventh Circuit has that very, very high standard. And now I can't remember what it is, but like- Bad faith. Yeah. I was just wondering if you could address Judge Sykes' separate opinion. And my specific question is whether you think that opinion also is wrong when it says that you don't apply the Trovich standard under these circumstances, that when a governmental official or body is legally required to represent the state's interest, then it's reasonable, fair, and consistent with the start from a presumption of adequate representation. And there should be a heightened burden to show a concrete substantive conflict or an actual divergence of interest. Can you live with that standard or is that too high, do you think? Well, yeah. We could live with it in the sense that we'd overcome that standard if that were the standard, but we don't think it is the standard. And particularly here where the statutes are clear that not only are our clients agents of the state, but that we have final decision-making authority. That was a big point that the had, which is this is going to be difficult for us to know who's actually speaking on behalf of the state. Here in North Carolina, we don't have that problem. Can I ask a question on that, counsel? Yes. Could the plaintiffs here have chosen to sue your clients? So in other words, the question is, given the structure that North Carolina law sets up, is the refusal to permit your intervention effectively given the plaintiffs the option to choose who is going to defend the law? I think there's a strong argument that they were required to name us under Rule 19 as necessary parties given our role under North Carolina state law. But yes, they could have sued us and they chose not to sue us. And they're fighting very hard to keep us out of the case for some reason. Now, as I was saying, federalism doesn't require deference. Mr. Thompson, this is Judge Quattlebaum. I had a question that related to something you said initially in the list of things you felt indicated inadequacy. And I think you indicated that one of those reasons was the Yes, sir. And how is that before us? That did not, I don't, if I missed it, I apologize, but it did not seem to be part of the record below. And it seemed like the event where that, you know, manifested itself was the preliminary injunction hearing, which happened after the order. So assume I thought that was an important factor. How was that before us now? And did you make that argument below to the district court? Your Honor, we didn't make it below to the district court because the court is correct that it had not occurred. I think there are one of two ways the court could look at this. First is as a predictive judgment, putting oneself in the shoes of the district court when its second decision was made, you know, what did it know? And at that point, what it knew is that the state attorney general had made the decision not to say one word on likelihood of success and the merits on intentional discrimination on the state court case and knew that the governor, who has day-to-day supervisory responsibility for the State Board of Elections, had openly sided by that point with the NAACP in related litigation in the state of North Carolina. The other way to look at it, and by the way, I would add nobody has objected on the other side to our citing to these, is as a confirming analytic, to look at events after to see were the prediction that we say was plainly correct, did it come to pass? And it's not just the failure to put in the experts, it's the failure to make a dispositive legal argument under the Quince case. There is no explanation or excuse for the attorney general not to have objected to the NAACP sitting on its hands for nine months, failing to move for this preliminary injunction. I would just like to say in closing that with respect to adequacy of representation, this court does not need to get into whether there was, no one's alleging sabotage of this case. I used that word with respect to 2016. There are two ways to rule in our favor under adequacy of representation in this case. First is that there's a divergence of interest, and second is that there has not been adequate representation in this case. Thank you, your honors. Thank you very much. This is the part of argument where we would normally come down and shake hands with counsel, and although we can't do that today, we are deeply grateful for your assistance today and for your willingness to hang with us through some technical difficulties, Mr. Thompson, and we hope you all stay well and healthy and are very thankful that you're here today. Thank you. And we will now recess. Thank you, your honor.
judges: Pamela A. Harris, Julius N. Richardson, A. Marvin Quattlebaum Jr.